**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EVAN NOCKS,<br><br>Plaintiff,<br><br>v.<br><br>MOBILEIRON, INC., SIMON BIDDISCOMBE, TAE HEA NAHM, JESSICA DENECOUR, KENNETH KLEIN, JAMES TOLONEN, ANJALI JOSHI, and RISHI BAJAJ,<br><br>Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**BACKGROUND**

1. This action concerns a proposed transaction announced on September 28, 2020, pursuant to which MobileIron, Inc. ("MobileIron" or "the Company") will be acquired by Ivanti, Inc. ("Invanti")

2. On September 26, 2020, MobileIron's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement"), pursuant to which MobileIron's stockholders will receive $7.05 per share in cash for each share of common stock they own (the "Proposed Transaction").

3. On October 26, 2020, in order to convince MobileIron's stockholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading proxy statement (the "Proxy") with the United States Securities and Exchange

Commission ("SEC").

4. The Proxy omits material information with respect to the Proposed Transaction, which renders the Proxy false and misleading. Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy.

5. In addition, the Proxy disclosed that a special meeting of MobileIron stockholders will be held on November 24, 2020, at 10:00 a.m. to vote on the Proposed Transaction (the "Stockholder Vote"). It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the Stockholder Vote so MobileIron stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

**JURISDICTION & VENUE**

6. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7. This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received

substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District. Additionally, the Company's common stock trades on the NASDAQ, which is headquartered in this District.

## THE PARTIES

9. Plaintiff is, and has been continuously throughout all times relevant hereto, an owner of MobileIron common stock.

10. Defendant MobileIron is a Delaware corporation and a party to the Merger Agreement. MobileIron common stock is traded on the NASDAQ under the ticker symbol "MOBL."

11. Defendant Simon Biddiscombe is Chief Executive Officer, President, and a director of the Company.

12. Defendant Tae Hea Nahm is Chairman of the Board of the Company.

13. Defendant Jessica Denecour is a director of the Company.

14. Defendant Kenneth Klein is a director of the Company.

15. Defendant James Tolonen is a director of the Company.

16. Defendant Anjali Joshi is a director of the Company.

17. Defendant Rishi Bajaj is a director of the Company.

## FACTS

18. MobileIron is an established player in the zero trust security solutions market, and a leader in mobile-centric, zero trust solutions that go beyond traditional approaches to security by utilizing a more comprehensive set of attributes to grant secure access. MobileIron products and services validate the device, establish user context, check application authorization, verify the network, and detect and mitigate threats before granting secure access to a device or user. The

Company was incorporated in Delaware in July 2007 and is headquartered in Mountain View, California, with additional sales and support presence in North America, Europe, the Middle East, Asia and Australia and employees in India primarily focused on research and development.

19. Ivanti automates IT and Security Operations to discover, manage, secure and service from cloud to edge. From PCs to mobile devices, VDI, and the data center, Ivanti discovers IT assets on-premises, in cloud, and at the edge, improves IT service delivery, and reduces risk with insights and automation. Ivanti also helps organizations leverage modern technology in the warehouse and across the supply chain to improve delivery without modifying backend systems. Ivanti is a privately held company headquartered in Salt Lake City, Utah and has offices in multiple locations throughout the world.

20. On September 26, 2020, MobileIron's Board caused the Company to enter into the Merger Agreement.

21. The Merger Agreement further provides that MobileIron has agreed with Ivanti, a Delaware Corporation, and Oahu Merger Sub, Inc., a Delaware Corporation and a wholly owned subsidiary of Ivanti ("Merger Sub"). Under the Merger Agreement, among other things and subject to terms and conditions set forth therein, the Merger Sub will be merged with and into MobileIron, with MobileIron surviving.

22. At the Effective Time (as defined in the Merger Agreement), and as a result of the Merger:

> each share of Company Common Stock that is outstanding as of immediately prior to the Effective Time (other than Owned Company Shares or Dissenting Company Shares) will be cancelled and extinguished and automatically converted into the right to receive cash in an amount equal to $7.05, without interest thereon (the "Per Share Price"), in accordance with the provisions of Section 2.9 (or in the case of a lost, stolen or destroyed certificate, upon delivery of an affidavit (and bond, if required) in accordance with the provisions of Section 2.11).

23. The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Proposed Transaction.

24. It is therefore imperative that the Company common stockholders receive the material information that Defendants have omitted from the Proxy so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

25. Section 5.3 of the Merger Agreement provides for a "no solicitation" clause that prevents MobileIron from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

> (a) No Solicitation or Negotiation. Except as permitted by this Section 5.3, from and after the date hereof until the earlier to occur of the termination of this Agreement pursuant to Article VIII and the Effective Time, the Company will cease and cause to be terminated any discussions or negotiations with any Person and its Affiliates, directors, officers, employees, consultants, agents, representatives and advisors (collectively, "Representatives") that would be prohibited by this Section 5.3(a), request the prompt return or destruction of all non-public information concerning the Company or its Subsidiaries theretofore furnished to any such Person with whom a confidentiality agreement in contemplation of an acquisition transaction was entered into at any time within the six month period immediately preceding the date hereof and will (A) cease providing any further information with respect to the Company or any Acquisition Proposal to any such Person or its Representatives, other than through public disclosures that the Company makes in the ordinary course of business (for the avoidance of doubt, none of which shall be intended to facilitate an Acquisition Proposal); and (B) terminate all access granted to any such Person and its Representatives to any physical or electronic data room. Except as permitted by this Section 5.3, from and after the date hereof until the earlier to occur of the termination of this Agreement pursuant to Article VIII and the Effective Time, the Company Group will not, and will not instruct, authorize or knowingly permit any of its Representatives to, directly or indirectly,
>
> (i) solicit, initiate, propose or induce the making, submission or announcement of, or knowingly encourage, facilitate or assist, any proposal or inquiry that constitutes, or is reasonably expected to lead to, an Acquisition Proposal;
>
> (ii) furnish to any Person (other than to Parent, Merger Sub or any designees of Parent or Merger Sub or any of their Representatives) any non-public information relating to the Company Group or afford to any Person access to the

business, properties, assets, books, records or other non-public information, or to any personnel, of the Company Group (other than Parent, Merger Sub or any designees of Parent or Merger Sub or any of their Representatives), in any such case with the intent to induce the making, submission or announcement of, or to knowingly encourage, facilitate or assist, any proposal or inquiry that constitutes, or is reasonably expected to lead to, an Acquisition Proposal or any inquiries or the making of any proposal that would reasonably be expected to lead to an Acquisition Proposal;

(iii) participate or engage in discussions or negotiations with any Person with respect to an Acquisition Proposal (other than informing such Persons of the provisions contained in this Section 5.3);

(iv) approve, endorse or recommend any proposal that constitutes, or is reasonably expected to lead to, an Acquisition Proposal (provided, however, that this subsection shall not preclude internal non-public deliberations and actions of the Company Board and management (which actions by themselves do not trigger disclosure requirements for the Company) and non-public discussions of the Company Board and management with its advisors, in each case with respect to an Acquisition Proposal); or

(v) enter into any letter of intent, memorandum of understanding, merger agreement, acquisition agreement or other Contract relating to an Acquisition Transaction, other than an Acceptable Confidentiality Agreement (any such letter of intent, memorandum of understanding, merger agreement, acquisition agreement or other Contract relating to an Acquisition Transaction, other than an Acceptable Confidentiality Agreement, an "Alternative Acquisition Agreement").

From the date hereof until the earlier to occur of the termination of this Agreement pursuant to Article VIII and the Effective Time, the Company will not be required to enforce, and will be permitted to waive, any provision of any standstill or confidentiality agreement solely to the extent that such provision prohibits or purports to prohibit a confidential proposal being made to the Company Board (or any committee thereof).

26. In addition, Section 8.3 of the Merger Agreement requires MobileIron to pay a $30,450,000 "termination fee" to Ivanti in the event this agreement is terminated by MobileIron and improperly constrains the Company from obtaining a superior offer.

27. Defendants filed the Proxy with the SEC in connection with the Proposed Transaction. As alleged herein, the Proxy omits material information with respect to the Proposed Transaction, which renders the Proxy false and misleading.

28. First, the Proxy omits material information regarding MobileIron's financial projections.

29. With respect to MobileIron's financial projections, the Proxy fails to disclose all line items used to calculate Non-GAAP operating income (loss), Non-GAAP EBITDA, Non-GAAP net income (loss), and unlevered free cash flow. The Proxy also fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

30. The disclosure of projected financial information is material information necessary for MobileIron stockholders to gain an understanding of the basis for any projections as to the future financial performance of the company. In addition, this information is material and necessary for stockholders to understand the financial analyses performed by the Company's financial advisors rendered in support of any fairness opinion.

31. Second, the Proxy omits material information regarding the analysis performed by the Company's financial advisor Barclays Capital Inc. ("Barclays") in connection with the Proposed Transaction.

32. With respect to Barclays' *Selected Comparable Company Analysis*, the Proxy fails to disclose (i) the individual multiples and metrics for the companies observed by Barclays in the analysis, (ii) Barclays' full basis for selecting a range of 3.00x to 4.25x multiples of enterprise value to estimated calendar year 2020 revenue and a range of 2.75x to 4.00x multiples of enterprise value to estimated calendar year 2021 revenue, and (iii) Barclays' bases for selecting each of the companies observed. This information must be disclosed to make the Proxy not materially misleading to MobileIron stockholders and provide stockholders with full and relevant information in considering how to vote.

33. With respect to Barclays' *Selected Precedent Transactions Analysis*, the Proxy

fails to disclose: (i) the individual multiples and metrics for the transactions observed by Barclays in the analysis, (ii) Barclays's full basis for applying a range of 3.25x to 4.50x multiples of enterprise value to forward twelve-month revenue, and (iii) Barclays' bases for selecting each of the transactions observed. This information must be disclosed to make the Proxy not materially misleading to MobileIron stockholders and provide stockholders with full and relevant information in considering how to vote.

34. With respect to Barclays' *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the Company's terminal value, (ii) Barclays' full basis for applying the discount rates ranging from 9.5% to 11.5%, (iii) Barclays' full basis for applying a terminal multiple range of 9.0x to 12.0x, (iv) Barclays' full basis for applying a perpetuity growth rates range of 3.0% to 4.5%, and (v) the estimated present value of the NOLs. This information must be disclosed to make the Proxy not materially misleading to MobileIron stockholders and provide stockholders with full and relevant information in considering how to vote.

35. With respect to Barclays' *Equity Analyst Target Prices Analysis*, the Proxy fails to disclose: (i) the price targets reviewed by Barclays and (ii) the sources of those price targets. This information must be disclosed to make the Proxy not materially misleading to MobileIron stockholders and provide stockholders with full and relevant information in considering how to vote.

36. With respect to Barclays' *Illustrative Leveraged Acquisition Analysis*, the Proxy fails to disclose Barclays' bases for assuming: (i) a debt capital structure of MobileIron comprised of pro forma leverage of total debt to last-twelve month revenue of 1.5x, (ii) an equity investment that would achieve a rate of return of approximately 15% to 23% during a 5.5 year period, and (iii) a projected non-GAAP EBITDA terminal value multiple of 9.0 to 12.0x for such period. This

information must be disclosed to make the Proxy not materially misleading to MobileIron stockholders and provide stockholders with full and relevant information in considering how to vote.

37. With respect to Barclays' *Illustrative Transaction Premium Analysis*, the Proxy fails to disclose (i) the price transactions reviewed by Barclays and (ii) the premiums in each transaction reviewed. This information must be disclosed to make the Proxy not materially misleading to MobileIron stockholders and provide stockholders with full and relevant information in considering how to vote.

38. Third, the Proxy Statement also fails to disclose the amount of compensation Barclays received for providing such services to "Ivanti's principal stakeholder and the other party that had entered into the Joinder (as described above in "—Background of the Merger") and certain of their respective affiliates and portfolio companies," during the two years preceding the date of Barclays' fairness opinion.

39. Full disclosure of investment banker compensation and all potential conflicts is material information stockholders of MobileIron are entitled to receive in deciding what weight to place on the opinions and roles played by the investment banks in the Proposed Transaction.

40. The omission of the above-referenced material information renders the Proxy false and misleading.

41. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## CLAIMS FOR RELIEF

### COUNT I

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

44. Defendants issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

45. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to stockholders as required.

46. The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Proxy. Defendants were also negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully.

47. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

**COUNT II**

**(AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)**

48. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

50. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or

shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy.

52. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55. Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: October 29, 2020

**MOORE KUEHN, PLLC**

*/s/Justin Kuehn*
Justin A. Kuehn
Fletcher W. Moore
30 Wall Street, 8th floor
New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com
*Attorneys for Plaintiff*